**Donna M. NICHOLS; Dana Nichols**

**v.**

**ROPER–WHITNEY COMPANY, et al.**

Civ. No. 92–470–SD.

United States District Court, D. New Hampshire.

Feb. 15, 1994.

John M. Lewis, Portsmouth, NH, for plaintiffs.

Jeffrey B. Osburn, Manchester, NH, for Met–Coil Systems and Roper–Whitney Co.

Andrew D. Dunn, Esq., Manchester, NH, for Roper Properties, Inc., and Roper Industries, Inc.

### ORDER

DEVINE, Senior District Judge.

Plaintiffs Donna M. and Dana Nichols bring this products liability action against defendants Roper–Whitney Company, Met–Coil Systems, Inc., Roper Industries, Inc., and Roper Properties, Inc., for personal injuries suffered by Donna Nichols while she was operating a "slicer-shearer" machine. Defendants are allegedly liable for plaintiffs' injuries as successors to the corporation that manufactured said machine.

In their consolidated complaint, plaintiffs seek damages under theories of strict liability (Count I), negligence (Count II), and loss of consortium (Count III). This court's jurisdiction over plaintiffs' claims is based upon a diversity of citizenship. 28 U.S.C. § 1332(a)(1) and (c)(1). Presently before the court are (1) defendant Roper–Whitney Company's motion for summary judgment, to which plaintiffs object, and (2) plaintiffs' motion to vacate.

### Background

On or about April 16, 1990, Donna M. Nichols was allegedly injured while operating a slicer-shearer machine in the course of her employment at Chomerics, Inc., in Hudson, New Hampshire. Said machine has been identified as a Roper–Whitney machine with a serial number of 1490–7–81, model number 1376.[1] Plaintiffs' action involves a complex series of transactions through which Roper Whitney, Inc., the company that allegedly manufactured and marketed said machine, evolved into Roper–Whitney Company, the successor corporation now moving for summary judgment.

Plaintiff alleges that the slicer-shearer machine on which she was injured was manufactured in July 1981 by Roper Whitney, Inc., located at 2833 Huffman Boulevard in Rockford, Illinois. *See* Exhibit M.[2] At that time, Roper Whitney, Inc., was a wholly-owned subsidiary of Roper Industries, Inc., an Illinois corporation. *Id.*

On June 29, 1982, Roper Whitney, Inc., merged into Roper Industries, Inc. Exhibits H and I. On June 30, 1982, the "product line and virtually all the assets of the Roper Whitney business, except for the real estate, and the associated liabilities were transferred to Dexter Holdings, Inc., which then changed its name to Roper Industries, Inc. (Delaware)." Amended Exhibit R at 3. At the same time, the name of Roper Industries, Inc. (Illinois) was changed to Roper Pump Company, a wholly-owned subsidiary of Roper Industries, Inc. (Delaware).[3] Exhibit H. Through this series of transactions, the Roper Whitney business became an unincorporated division of Roper Industries, Inc. (Delaware), and was named Roper Whitney Company. Exhibits G and M.

On June 30, 1986, Roper Industries, Inc., and Roper Properties, Inc., entered into a purchase and sale agreement with Medart Acquisition Corporation whereby Medart

---

**1.** Defendant contends that "plaintiffs are mistaken with regard to the model number of the machine. In all likelihood, the actual model number is 137*G*, not 1376." Affidavit of Robert J. Benedict (attached as Exhibit A to Defendant's Motion for Summary Judgment) at ¶ 3.

**2.** All "Exhibits" referred to in this order, unless otherwise indicated, are a part of Plaintiffs' Objection to Defendant's Motion for Summary Judgment.

**3.** On March 29, 1983, Roper Pump Company's name was changed to Roper Properties, Inc. Exhibit H.

purchased Roper Whitney Company "as a going concern." *See* Purchase and Sale Agreement (Exhibit C), at 1. This transaction involved a transfer of "substantially all of the assets" of Roper Whitney Company to the newly formed Roper Whitney Corporation "in exchange for which all of the issued shares of capital stock" of said corporation were "issued to Roper Industries, Inc. and Roper Properties, Inc." *Id.* at 1–2.

On March 14, 1988, the operating assets of Roper Whitney Corporation were sold to Industries Machinery Systems and Supply, Inc. (IMSS), a wholly-owned subsidiary of Met–Coil Systems, Inc. *See* Asset Purchase Agreement (Exhibit E). The purchase price for said assets included, inter alia, a deposit in escrow of $300,000 worth of Met–Coil Systems stock. *Id.* at 3; Exhibit I. Following this transaction, Roper–Whitney Corporation's name was changed to Forest Industries, Inc., and IMSS changed its name to Roper–Whitney Company.[4] *See* Exhibits E, G, and I. Roper–Whitney Company continues to exist as a wholly-owned subsidiary of Met–Coil. *See* Exhibit O.

Throughout each of its incarnations, the Roper Whitney business remained at 2833 Huffman Boulevard in Rockford, Illinois. *See* Exhibit G. B. Bloomquist and R. Benedict are listed as officers of each Roper Whitney business between 1982 and 1992. *See* Defendant Roper–Whitney Company's Answers to Interrogatories (Exhibit N) at 11–12; Amended Exhibit B. J. Forlow and C. Koldziej appear on the list of officers for each incarnation of the Roper Whitney business from 1986, when the business was a wholly-owned subsidiary of Roper Industries, Inc., to 1988, when the business was a wholly-owned subsidiary of Met–Coil. *Id.*

### Discussion

#### A. Defendant's Motion for Summary Judgment

##### 1. Summary Judgment Standard

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the onus falls upon the moving party to aver " 'an absence of evidence to support the nonmoving party's case.' " *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986)). Once the moving party satisfies this requirement, the pendulum swings back to the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 [106 S.Ct. 2505, 2514, 91 L.Ed.2d 202] (1986) (citing Fed.R.Civ.P. 56(e) . . . .

*LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993). In determining whether the nonmoving party has met this burden, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513.

##### 2. Successor Liability

Defendant moves for summary judgment on the grounds that Roper–Whitney Company did not design, manufacture, or market the slicer-shearer machine in question. Plaintiffs object to defendant's motion, arguing that Roper–Whitney Company is liable under the doctrine of successor liability.

■ Under the doctrine of successor liability followed in New Hampshire, the general rule is that "a transferee of assets is not under ordinary circumstances liable for the debts of its predecessor." *Cyr v. B. Offen & Co.,* 501 F.2d 1145, 1152 (1st Cir.1974). However, this general rule is subject to the

---

**4.** Although Roper Whitney Company did not purchase the land and buildings located at 2833 Hoffman Boulevard, the company is leasing said property from Forest Industries, Inc., for a ten- year term with two options to renew for five years and an option to buy at the end of each term. *See* Exhibit E.

following well-recognized exceptions, which permit liability to be imposed on a successor corporation where

> (1) there is an express or implied assumption of liability; (2) the transaction amounts to consolidation or merger; (3) the transaction was fraudulent; (4) some of the elements of a purchaser in good faith were absent;[5] and (5) the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Id.* (citing *West Texas Refining & Dev. Co. v. Commissioner of Internal Revenue*, 68 F.2d 77, 81 (10th Cir.1933); 15 Fletcher Cyclopedia Corporations §§ 7122, 1723 (1973)). *See also Russell v. Philip D. Moran, Inc.*, 122 N.H. 708, 710, 449 A.2d 1208, 1210 (1982).[6]

### a. Express or Implied Assumption of Liability

█ The first exception to the general rule of successor nonliability applies when the purchasing corporation expressly or impliedly agrees to assume the selling corporation's liability. *Cyr, supra*, 501 F.2d at 1152; *Dayton, supra*, 739 F.2d at 692.

Plaintiffs concede "that the express assumption of liability exception does not apply in this case," Plaintiff's Memorandum at 13, but argue that defendant has impliedly agreed to assume the liabilities of its predecessors.

Defendant Roper–Whitney Company (formerly IMSS) obtained the assets of the Roper Whitney business through an Asset Purchase Agreement dated March 14, 1988. *See* Exhibit E. Said agreement contains provisions detailing which liabilities are assumed by IMSS as the purchasing corporation and which liabilities are excluded. *Id.* at 2. Those provisions state, in relevant part,

> B. *Excluded Liabilities.* Notwithstanding anything herein to the contrary, the following liabilities (the "Excluded Liabilities") shall not be assumed by the Buyer:
>
> . . . .
>
> (iv) Any and all liabilities or obligations of Seller (not specifically assumed) whether known or unknown, whenever arising, arising out of or in connection with (i) the manufacture, distribution or sale of any products by Seller (including warranty claims and product liability claims). . . .

*Id.* In light of this express disclaimer of liability, the court finds that no reasonable jury could conclude that there was an implied assumption of liability for products liability claims by defendant Roper–Whitney Company. *See, e.g., Wallace v. Dorsey Trailers Southeast, Inc.*, 849 F.2d 341, 343 (8th Cir. 1988).

### b. Merger or Consolidation

█ The de facto merger or consolidation exception to the general rule of successor nonliability "is applied by the courts to transactions which purport to be sales of corporate assets, but which in fact have elements more characteristic of a merger or consolidation." 2 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 7.04[5] (1993).

> One of the key requirements for a merger under traditional corporation law doctrine is "continuity of shareholders," which is found where the purchaser corporation exchanges its own stock as consideration for the seller corporation's assets so that the shareholders of the seller corporation become a constituent part of the purchaser corporation.

*Dayton, supra*, 739 F.2d at 693 (citing *Shannon v. Samuel Langston Co.*, 379 F.Supp. 797, 801 (W.D.Mich.1974)). Other factors to consider include: continuity of management, personnel, physical location, assets, and general business operations; dissolution of the seller corporation; and the assumption by

---

**5.** The court notes that the First Circuit now views the third and fourth exceptions listed in *Cyr, supra*, as a single exception. *See, e.g., Dayton v. Peck, Stow & Wilcox, Co.*, 739 F.2d 690, 692 (1st Cir.1984).

**6.** In its motion for summary judgment, defendant argues, inter alia, that it cannot be held liable under the so-called product-line exception to the general rule of successor nonliability as said exception was specifically rejected by the New Hampshire Supreme Court in *Simoneau v. South Bend Lathe, Inc.*, 130 N.H. 466, 543 A.2d 407 (1988). Plaintiffs concede that New Hampshire has rejected the product-line exception. Plaintiff's Memorandum at 3.

the purchasing corporation of "those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *Shannon, supra,* 379 F.Supp. at 801. *Accord Dayton, supra,* 739 F.2d at 693; *Schwartz v. Pillsbury, Inc.,* 969 F.2d 840, 846 (9th Cir.1992); *Arnold Graphics Indus., Inc. v. Independent Agent Ctr., Inc.,* 775 F.2d 38, 42 (2d Cir.1985).

■ In this action, plaintiffs have submitted evidence showing a continuity of assets, physical location, and general business operations. *See* Exhibits C, E, and G. Plaintiffs' evidence further shows that there has been some continuity of shareholders through each of Roper Whitney's incarnations, and that the successor corporations at issue assumed those liabilities and obligations of their predecessors necessary for the uninterrupted continuation of normal business operations. *See* Exhibits C and E.

The court finds that the evidence before it is sufficient to support a finding that defendant Roper–Whitney Company is liable as a successor to Roper Whitney, Inc., under the de facto merger or consolidation exception to the general rule of successor nonliability.

### c. Fraudulent Transfer of Assets

■ The fraudulent transfer of assets exception to the general rule of successor nonliability applies when assets are transferred in order to escape liability. *See, e.g., Dayton, supra,* 739 F.2d at 692.

The evidence presented by plaintiffs shows that the assets of the Roper Whitney business have been the subject of repeated asset transfers. Said transfers have taken place in the context of mergers, the creation of new wholly-owned subsidiaries, and the formation of new corporate entities. The extent to which said transfers have included a corresponding assumption of liability for products liability claims such as the one at issue has varied. The most recent asset transfer, which occurred in March 1988 and involved the sale of Roper Whitney Corporation's operating assets to IMSS, specifically excluded

from the liabilities assumed by IMSS "[a]ny and all liabilities or obligations of Seller (not specifically assumed) whether known or unknown, whenever arising, arising out of or in connection with (i) the manufacture, distribution or sale of any products by Seller (including warranty claims and product liability claims)...." Exhibit E at 2.

The court finds that the evidence presented is sufficient to support a finding that the assets of the Roper Whitney business were repeatedly transferred from one entity to another in order to escape liability and that defendant Roper–Whitney Company is consequently liable as a successor to Roper Whitney, Inc.

### d. Mere Continuation

■ The mere continuation exception "is generally applied whenever the successor corporation more closely resembles a reorganized version of its predecessor than an entirely new corporate entity." 2 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 7.04[4] (1993).

■ Under the "substantial continuity" or "continuity of enterprises" approach, the following eight factors are typically taken into account in determining if a successor corporation is a "mere continuation" of its predecessor:

(1) Retention of the same employees;

(2) Retention of the same supervisory personnel;

(3) Retention of the same production facility in the same physical location;

(4) Production of the same product;

(5) Retention of the same name;

(6) Continuity of assets;

(7) Continuity of general business operations; and

(8) Whether the successor holds itself out as the continuation of the previous enterprise.

*Russell v. SunAmerica Securities, Inc.,* 962 F.2d 1169, 1176 n. 2 (5th Cir.1992) (citing *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 175 (5th Cir.1985)).[7]

---

**7.** The court acknowledges that other approaches exist for determining whether the mere continuation exception applies. *See, e.g., Mozingo, supra,* 752 F.2d at 174–75. However, on the basis of

Here, plaintiffs have submitted evidence showing that there has been a continuity of assets through each of the Roper Whitney incarnations. *See* Exhibits C, E, H, and I; Amended Exhibit R. Further, each incarnation of said business has operated out of the facilities located at 2833 Huffman Boulevard in Rockford, Illinois, and has used "Roper Whitney" as part of its name. *See* Exhibit G. The evidence presented by plaintiffs also indicates that there has been some continuity with regard to the officers of each Roper Whitney business. *See* Exhibit N; Amended Exhibit B.

The court finds that the evidence presented is sufficient to support a finding that defendant Roper–Whitney Company is liable as a successor to Roper Whitney, Inc., under the theory that it is a mere continuation of its predecessor corporations.

### *3. Negligent Failure to Warn*

█ Defendant moves for summary judgment on plaintiffs' negligent failure to warn claim on the ground that it had no duty to warn "the plaintiff or her employer of possible defects in the identified machine." Defendant's Memorandum at 7.

Under New Hampshire law, "[t]he duty to warn is concomitant with the general duty of the manufacturer, which 'is limited to foreseeing the probable results of the normal use of the product or a use that can reasonably be anticipated.'" *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 808, 395 A.2d 843, 847 (1978) (quoting *McLaughlin v. Sears, Roebuck & Co.,* 111 N.H. 265, 268, 281 A.2d 587, 588 (1971)).

> A successor corporation may have a duty to warn of discovered defects in its predecessor's products, but this duty does not arise unless there is some continuation of the relationship between the successor and the customers of the predecessor. Some of the factors which are used in determining whether there is a continuity of a relationship is (1) whether the successor takes over the service contracts of the predecessor; (2) whether the successor knows of defects in the equipment; and (3) whether the successor knows of the location of the owners of the equipment.

*Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 177 (5th Cir.1985). Where such factors are present, "[t]he successor corporation's liability stems not from its status as a successor, but from its establishment of a relationship with the customer that imposes certain duties and responsibilities. Succession alone does not generate a duty to warn." *Polius v. Clark Equip. Co.,* 802 F.2d 75, 84 (3d Cir. 1986) (citing *Tucker v. Paxson Machine Co.,* 645 F.2d 620, 626 (8th Cir.1981)).

In support of their motion, defendants have submitted the affidavit of Roger Benedict, Vice President of Product Engineering at Roper–Whitney Company. Benedict states,

> The records at Roper–Whitney Company do not contain any information with regard to the machine identified by the plaintiffs or its alleged defects. Nothing in the available records indicates that this company was ever made aware of the purchase of that machine by Chomerics, Inc., and certainly we have not maintained any ongoing business or service arrangement with Chomerics, Inc. in relation to the machine identified by the plaintiff.

Benedict Affidavit at ¶ 8.

Plaintiffs contend that a genuine issue exists as to whether defendant had a duty to warn since (1) the 1986 Purchase and Sale Agreement and the 1988 Asset Purchase Agreement indicate that defendant acquired all of its predecessors' customer lists and related information, *see* Exhibits C and E, and (2) defendant's interrogatory answers and appended documents include a summary of products liability claims dated March 24, 1988, which includes several claims arising from the use of shearer machines. *See* Exhibit M. Plaintiffs do not contend that there was a service contract on the machine in question to which defendant succeeded.

On the basis of the evidence before it, the court concludes that a genuine issue exists as

---

*Cyr, supra,* and the New Hampshire Supreme Court's rejection of the product-line theory in *Simoneau, supra,* the court finds that New Hampshire would follow the approach described herein.

to whether defendant had knowledge that the machine in question was defective and that plaintiff's employer owned such a machine. Accordingly, the court further finds that the evidence presented is sufficient to support a finding that defendant had a duty to warn plaintiff of defects in the machine in question.

### B. Plaintiffs' Motion to Vacate

On December 7, 1993, this court entered an order dismissing this action as to defendants Forest Industries, Inc., and Medart Acquisition Corporation pursuant to Local Rule 21(c) for failure to prosecute.

 Plaintiffs move to vacate said order on the ground that they had not yet sought an entry of default because plaintiffs' counsel was attempting to obtain information from defendants "regarding the various complex corporate transactions upon which Roper Whitney Company is attempting to escape liability in its Motion for Summary Judgment." Plaintiffs' Motion to Vacate at ¶ 6. Forest Industries, Inc., and Medart Acquisition Corporation have not responded to plaintiffs' motion.

In light of the complexity of the corporate transactions between and among the defendants in this action, the court finds that the reasons given for plaintiffs' failure to previously seek an entry of default against Forest Industries, Inc., and Medart Acquisition Corporation are sufficient to warrant a grant of relief from this court's December 7, 1993, order. Accordingly, said order is hereby vacated.

### Conclusion

For the reasons set forth above, the court (1) denies defendant's motion for summary judgment (document 8), and (2) grants plaintiffs' motion to vacate (document 27).

The court notes that plaintiffs have also moved for an entry of default against defendants Medart Acquisition and Forest Industries, Inc. The court will defer its ruling on said motion until March 1, 1994, to allow those defendants an opportunity to plead or otherwise defend.

SO ORDERED.