**Lee MacCLEERY**

v.

**T.S.S. RETAIL CORP., et al.**

**Civ. No. 93–419–JD.**

United States District Court,
D. New Hampshire.

Nov. 23, 1994.

**14**

Paul Rinden, Rinden Prof. Assoc., Concord, NH, for MacCleery.

Edward Kaplan, Sulloway & Hollis, Concord, NH, for Royce Union Bicycle, Inc.

Andrew Dunn, Devine, Millimet & Branch, P.A., Manchester, NH, for Waite Corp.

### ORDER

DiCLERICO, Chief Judge.

The plaintiff, Lee D. MacCleery, brings this products liability action against defendant Waite Corporation ("Waite"), defendant T.S.S. Retail Corporation ("TSS Retail"), and defendant Royce Union Bicycle, Inc. ("Royce Bicycle") for injuries related to a bicycle accident. The plaintiff alleges, *inter alia,* that Royce Bicycle is liable for its own conduct relative to the design and manufacture of the bicycle and is also liable for the conduct of TSS Retail under a corporate successorship theory. The court's jurisdiction is based on diversity of citizenship as provided by 28 U.S.C.A. § 1332 (West 1993).

Before the court is Royce Bicycle's motion for summary judgment (document no. 17).

### Background

On August 5, 1990, the plaintiff was riding a bicycle on a paved road in Chichester, New Hampshire. Complaint at ¶ 19. The plaintiff suffered personal injury when the hand brake on the bicycle failed, causing her to fall. *Id.*

The plaintiff purchased the bicycle from Waite at some time between 1975 and 1985. Plaintiff's Counter–Affidavit ("Plaintiff's Affidavit") at ¶ 3.

The plaintiff has made the following allegations of fact. TSS Retail was incorporated in 1929. Plaintiff's Affidavit at ¶ 2. Royce Union Corporation ("Royce Union") was incorporated in 1950 and, in that year, began to distribute bicycles bearing the "Royce Union" label through TSS Retail. *Id.* at ¶ 2, ex. 2 at 14. Since that time TSS Retail has been intertwined with the manufacture and distribution of Royce Union bicycles through the joint use of employees, officers and distribution channels. *Id.* at ¶ 11.

On June 20, 1989, Royce Bicycle was incorporated with Harold Gottschall as its president and sole shareholder. Plaintiff's Affidavit at ¶¶ 12, 14, ex. 2 at 6–7. Gottschall had been "associated with Royce Union/TSS Retail" since 1979, as an employee and, later, as an officer. *Id.* at ¶ 12, ex. 2 at 14. On June 30, 1989, Royce Bicycle executed an agreement with TSS Retail for the purchase of certain assets of TSS' bicycle business. *Id.* at ¶ 2. On December 4, 1989, TSS and two affiliated companies, TSS–Seedman's, Inc. and TSS Acquisitions Corporation, filed for bankruptcy. *Id.* at ¶ 13, ex. 2. at 11.

The agreement called for the sale of "certain of the assets of [TSS Retail] relating to its bicycle division." Agreement at introduction. The assets included the division's inventory, machinery, equipment, advertising and promotional materials, catalogues, displays, records, and customer orders. *Id.* at ¶ 1.1. Royce Bicycle also purchased various trade names, including "Royce Bicycle", and the right to use TSS Retail's customer lists. *Id.* at ¶¶ 1.1, 1.5. The agreement contained the following provision:

> Purchaser is not assuming and shall not be responsible for any obligations or liabilities of the seller, whether related to the business of the [bicycle] Division, the Assets or otherwise.

*Id.* at ¶ 1.2. The agreement also contained extensive indemnity provisions which provided, *inter alia,* that TSS Retail "shall indemnify and hold harmless [Royce Bicycle] ... for any loss, liability, claim, damage or expense ... arising from or in connection with ... (c) any bicycle shipped by [TSS Retail] on or before the Closing Date ..." *Id.* at ¶ 9.2.

Royce Bicycle has made the following allegations of fact in support of its motion for summary judgment. The plaintiff's bicycle

was designed, manufactured and shipped prior to June 30, 1989 and was probably designed, manufactured and shipped before 1983. Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Defendant's Memorandum") at 3–4; Affidavit of Edward McFarlane at ¶¶ 8, 9. The agreement only called for the purchase of certain assets and both Royce Bicycle and TSS Retail continued to exist as independent corporations following the sale. Defendant's Response to Plaintiff's Objection to Motion for Summary Judgment ("Defendant's Response") at ¶¶ 5–7.

*Discussion*

The plaintiff asserts that Royce Bicycle is directly liable because either it or TSS Retail manufactured and distributed her bicycle. Plaintiff's Motion for Joinder of Additional Defendant ("Amended Complaint") at ¶ 3. The plaintiff also asserts that Royce Bicycle is liable as a corporate successor to TSS Retail. Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Plaintiff's Objection") at ¶ 15. ("That the transactions between T.S.S. Retail and Royce Union [Bicycle] do, in fact, amount to such a consolidation and merger. Royce Union is a mere continuation and reincarnation (or reorganization) of T.S.S.")

In its motion for summary judgment, Royce Bicycle asserts that it cannot be directly liable because the bicycle was designed, manufactured and shipped prior to its 1989 incorporation and acquisition of TSS Retail's bicycle division. Defendant's Memorandum at 3–4, 6. Royce Bicycle further asserts that it cannot be liable as a corporate successor because, under the terms of the agreement, TSS Retail retained responsibility for bicycles shipped on or before June 30, 1989. *Id.* at 4–6.

■ The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Snow v. Harnischfeger Corp.,* 12 F.3d 1154, 1157 (1st Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994) (quoting *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* ——

U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Quintero de Quintero v. Aponte–Roque,* 974 F.2d 226, 227–28 (1st Cir.1992). The court must view the entire record in the light most favorable to the plaintiff, " 'indulging all reasonable inferences in that party's favor.' " *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (quoting *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990)), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).

*A. Royce Bicycle's Individual Liability*

■ The plaintiff asserts that Royce Bicycle designed, manufactured and distributed the bicycle and, as such, may be directly liable for its own conduct. Royce Bicycle requests summary judgment for its individual liability on the grounds that the bicycle was designed, manufactured and distributed prior to its incorporation.

The plaintiff claims that she purchased the bicycle sometime between 1975 and 1985. The defendant claims that the bicycle was sold as early as 1983 and definitely before 1989. Under either version of events, it is clear that the bicycle was sold before June 20, 1989, the agreed upon date of Royce Bicycle's incorporation. Under the traditional tort causation requirement the "imposition

of liability depends upon the plaintiff proving that the defendant manufacturer made the product that caused the plaintiff's injury." *University Sys. of New Hampshire v. U.S. Gypsum Co.*, 756 F.Supp. 640, 653 (D.N.H. 1991) (citations omitted). It is self evident that Royce Bicycle could not have been involved in the design, manufacture or distribution of a product sold before its incorporation. Thus, Royce Bicycle has not itself engaged in any conduct for which, as a matter of law, it could be directly liable.[1]

### B. Royce Bicycle's Successor Liability

■ The plaintiff asserts that Royce Bicycle is liable as the corporate successor to TSS Retail. Royce Bicycle requests summary judgment on the grounds that its relationship with TSS Retail cannot support a finding of successor liability as a matter of law. The plaintiff objects on the grounds that there are genuine issues of material fact relative to the TSS Retail–Royce Bicycle relationship that must be resolved prior to a ruling on the successor liability issue.

At common law, a corporation which purchases the business assets of another does not assume the liabilities of the predecessor corporation absent the application of one of four exceptions to this general rule: (1) the successor expressly or impliedly agrees to assume liability; (2) the transaction may be considered a *de facto* merger; (3) the successor may be considered a "mere continuation" of the predecessor; or (4) the transaction is found to have been fraudulent. *Kleen Laundry & Dry Cleaning v. Total Waste Management Corp.*, 817 F.Supp. 225, 230 (D.N.H. 1993); *see John S. Boyd Co. v. Boston Gas Co.*, 992 F.2d 401, 408 (1st Cir.1993); *Nichols v. Roper–Whitney Co.*, 843 F.Supp. 799, 802 (D.N.H.1994).

The plaintiff argues that Royce Bicycle is a successor under either the *de facto* merger or mere continuation exceptions. Plaintiff's Objection at ¶ 15; Plaintiff's Affidavit at ¶¶ 15, 16, 18; Plaintiff's Memorandum at 3–4.

### 1. The De Facto Merger Exception

■ The *de facto* merger exception permits the court to hold a purchaser of business assets liable for the conduct of the transferor corporation if the parties have achieved "virtually all the results of a merger," even if they have not observed the statutory requirements of a *de jure* merger. *Kleen Laundry*, 817 F.Supp. at 230 (citing *In re Acushnet River & New Bedford Harbor Proceedings re: Alleged PCB Pollution*, 712 F.Supp. 1010, 1015 (D.Mass.1989)); *see Nichols*, 843 F.Supp. at 803–04. The court examines four factors when determining whether a purported asset sale constitutes a *de facto* merger:

(1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.

(2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation.

(3) The seller corporation ceases its ordinary business operations, liquidates and dissolves as soon as legally and practically possible.

(4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Kleen Laundry*, 817 F.Supp. at 230–32; *see Nichols*, 843 F.Supp. at 803–04. While all of these factors favor the finding of a *de facto* merger, "no one of these factors is either necessary or sufficient to establish a *de facto* merger." *Kleen Laundry*, 817 F.Supp. at 231.

---

1. The plaintiff also argues that summary judgment is inappropriate because it is unclear who actually manufactured her bicycle and because "ownership and control over production of bicycles between the years of 1950 through 1989 are highly material and relevant ..." Plaintiff's Affidavit at ¶¶ 19, 20. The argument is unavailing. Royce Bicycle is entitled to summary judgment on the question of its direct liability so long as it is undisputed that it was not involved with the bicycle, even if it remains unclear who actually was involved.

## 2. The Mere Continuation/Substantial Continuity Exception

██ Under the traditional view of the "mere continuation" exception, the court may find a corporation to be the continuation of a predecessor corporation only if one party survives the purported asset sale and both parties share an identity of stock, stockholders and directors. *Kleen Laundry,* 817 F.Supp. at 231 (citing *U.S. v. Carolina Transformer,* 978 F.2d 832, 838 (C.A. 4 (N.C.) 1992)); *see Nichols,* 843 F.Supp. at 804–05. However, New Hampshire courts and others have recently adopted a broader interpretation of the exception, known as the "continuity of enterprise" or the "substantial continuity" doctrine. *Nichols,* 843 F.Supp. at 804–05, n. 7 (citations omitted); *Kleen Laundry,* 817 F.Supp. at 231 (citations omitted); *see Northwestern Mutual Life Insurance Company v. Atlantic Research Corp.,* 847 F.Supp. 389, 399 (E.D.Va.1994) (citations omitted). The court examines a series of factors when determining whether successor liability is appropriate under this alternative theory:

(1) retention of the same employees;

(2) retention of the same supervisory personnel;

(3) retention of the same production facilities in the same location;

(4) production of the same product;

(5) retention of the same name; ·

(6) continuity of assets;

(7) continuity of general business operations; and

(8) whether the successor holds itself out as the continuation of the previous enterprise.

*Nichols,* 843 F.Supp. at 804; *Kleen Laundry,* 817 F.Supp. at 231 (citations omitted).

██ The plaintiff has submitted evidence, including the Dunn and Bradstreet reports and the agreement, which suggests a continuity .of management, personnel, assets and general operations such that Royce Bicycle purchased and continued the normal business operations of TSS Retail's bicycle division. The "Royce Union" label is still used in the industry and, arguably, Royce Bicycle has held itself out as the continuation of the Royce Union Bicycle tradition. Royce Bicycle also purchased the rights to use TSS Retail's customer lists. The evidence further indicates that TSS Retail may have ceased its ordinary business operations for reasons related to the execution of the agreement.[2]

The plaintiff's ability to prevail under either successor liability exception necessarily turns on the relationship between Royce Bicycle and TSS Retail. The court finds that the evidence before it, when accorded all reasonable inferences, reveals the existence of a genuine dispute of material fact concerning the nature and extent of this relationship.

### Conclusion

For the foregoing reasons, defendant Royce Bicycle's motion for summary judgment (document no. 17) is granted in part and denied in part. The motion is granted with respect to the plaintiff's claim that Royce Bicycle is liable for its own conduct relative to the bicycle. The motion is denied with respect to the plaintiff's successor liability claim.

· SO ORDERED.

---

**2.** Royce Bicycle places great weight on the fact that, under the agreement, it did not assume any liability related to TSS Retail's bicycle division. The court recognizes that the inclusion of such a provision in the agreement probably forecloses a finding that Royce Bicycle is liable under the assumption of liability exception. However, the plaintiff has not argued this exception and the provision does not bar application of the two theories of successor liability that she has advanced (i.e. the *de facto* merger and mere continuation exceptions). Rather, the court considers the provision as one straw in the overall bundle of evidence on the issue of Royce Bicycle's relationship to TSS Retail.