**Gary R. KLUMPP and Judith M. Klumpp, Plaintiffs,**

**v.**

**BANDIT INDUSTRIES, INC., Asplundh Manufacturing Division, Altech Industries, Inc., Foremost Fabrications, Inc., and Asplundh Tree Expert Company, Defendants.**

**Asplundh Tree Expert Co. and Altec Industries, Inc., Third–Party Plaintiffs,**

**v.**

**Economy Tree Service, Inc., Third–Party Defendants.**

**And Other Third–Party Actions**

**No. 97–CV–0674C(SC).**

United States District Court, W.D. New York.

Sept. 12, 2000.

Quinn, McGarry & Caffery (Michael P. Caffery, of Counsel), Buffalo, NY, for Plaintiffs.

Nixon Peabody LLP (John J. Weinholtz, of Counsel), Buffalo, NY, for Defendant Altec Industries, Inc.

## DECISION AND ORDER

CURTIN, District Judge.

### INTRODUCTION

Currently before this court is defendant Altec Industries' motion for summary judgment. Altec seeks dismissal from plaintiffs' personal injury action. Items 33, 34, 45, 46, 62, and 63. Plaintiffs respond in opposition. Items 36, 37, 50, 51, and 60. Oral argument was held on June 13, 2000.

### BACKGROUND

#### I. Facts

In January of 1987, Asplundh Manufacturing Division of Asplundh Tree Expert Company purchased a JDC–100 Brush Bandit brush chipper ("the chipper") from Foremost Fabrications Inc. (the predecessor company to defendant Bandit Industries, Inc. ("Bandit")). Item 36, Exh. B. Shortly thereafter, Asplundh Manufacturing Division ("Asplundh Manufacturing") sold the chipper to Big Ben Tree, Inc. *See* Item 62, Exh. S at p. 10.

In June of 1992, Altec Industries, Inc. ("Altec"), and Asplundh Tree Expert Company ("Asplundh") exercised an asset purchase agreement wherein Altec purchased, among others, the assets of Asplundh Manufacturing. Item 60, Exhs. A–B. Asplundh, however, remained a viable company, performing a variety of other services.

In or around April 13, 1993, plaintiff's employer, Economy Tree Services, Inc. ("Economy"), acquired the chipper at an equipment auction. Item 36, Exh. C. Three years later, on July 23, 1996, plain-

tiff Gary Klumpp was feeding branches into the chipper as part of his employment with Economy when his arms became entangled in the branches that were simultaneously being pulled into the chipper knife. Item 36, ¶ 39. Unable to free himself from the branches, plaintiff's right arm was pulled into the chipper, causing the partial amputation of his right hand. *Id.*

## II. Procedural History

Plaintiffs Gary and Judith Klumpp filed the present personal injury action in New York State Supreme Court on July 1, 1997 naming Altec, Asplundh, Asplundh Manufacturing, Foremost Fabrications, Inc., and Bandit as defendants. Item 36, Exh. A. Plaintiff Gary Klumpp's claims against defendants are based upon products liability, negligence, breach of warranty, and failure to warn. His wife, Judith Klumpp, seeks relief for the loss of consortium with her husband. *Id.* In total, they seek more than $36 million in damages. *Id.*

On September 2, 1997, defendants removed the action to federal court. Item 1. Additionally, in September of 1997, defendants each filed answers raising a host of affirmative defenses and asserting several cross-claims for indemnification or contribution from other co-defendants. *See* Items 4–6. In September of 1999, defendants Bandit, Foremost Fabrication, Inc., Asplundh, and Altec Industries filed third-party complaints against plaintiff's employer (Economy) for indemnification or contribution should they be found liable for any or all of plaintiffs' injuries. *See* Items 21–22.

The present motion for summary judgment was filed by defendant Altec on December 14, 1998. Items 33, 34. In response, plaintiffs argued that Altec's motion for summary judgment was premature, given that a full copy of the asset purchase agreement between Altec and Asplundh Tree Expert had yet to be produced. *See* Items 36–37. Accordingly, plaintiffs cross-moved to compel production of the purchase agreement in full. *Id.* This court granted plaintiffs' motion to compel on August 10, 1999, and a complete copy of the asset purchase agreement was disclosed to plaintiffs shortly thereafter. Item 53. Therefore, the only motion pending before this court is Altec's motion for summary judgment.

## *DISCUSSION*

### I. Applicable Standard

A motion for summary judgment may be granted only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *see Trebor Sportswear Co. Inc. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989). The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the present case, defendant Altec moves for summary judgment as to its liability under any theory of relief, negligence, products liability, or otherwise. Essentially, Altec argues that based on the asset purchase agreement it signed with Asplundh and under New York state law, it cannot be held liable as a successor corporation. It further argues that there are no facts to support plaintiffs' failure-to-

warn allegations; and thus, summary judgment on that is also appropriate.

## II. Successor Liability Under New York Law

■ Generally, a corporation which acquires the assets of another is not liable for the torts of its predecessor unless: "(1) [the successor corporation] expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape [tort liability] obligations." *Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195 (Ct.App.1983).

Here, plaintiffs argue that Altec's summary judgment motion should be denied under Fed.R.Civ.P. 56(f), as discovery is in its infancy; and in their opinion, sufficient evidence has not yet been proffered to determine whether Altec is liable under the implied assumption of liability, mere continuation, or de facto merger exceptions. *See* Item 37 at p. 5.

### A. Implied or Express Assumption of Liability Exception

■ Plaintiffs argue that there is an issue of fact as to whether Altec expressly or impliedly assumed liability when it purchased the assets of Asplundh Manufacturing. *See* Item 37 at p. 5. The court finds this contention without merit. It is clear from the asset purchase agreement and the amendments attached thereto that Altec expressly rejected all liability, including tort liability, for machines manufactured or distributed prior to the effective date of the asset purchase agreement. *See* Item 60, Exh. A at §§ 1.1(a), 1.5(a)-(b)(ii), 1.6(a); Exh. B at §§ 6.2(iv)(a)-(b), (v). As such, plaintiffs' argument on this ground fails.

### B. Mere Continuation Exception

■ "The mere continuation exception 'refers to corporate reorganization . . . where only one corporation survives the transaction'; the predecessor corporation must be extinguished." *Parra v. Production Machine Co.*, 611 F.Supp. 221, 223 (E.D.N.Y.1985) (quoting *Schumacher*, 464 N.Y.S.2d at 440, 451 N.E.2d 195). "If the predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable." *Diaz v. South Bend Lathe, Inc.*, 707 F.Supp. 97, 100 (E.D.N.Y. 1989).

■ In the present case, after Asplundh sold the assets of its manufacturing division (Asplundh Manufacturing) to Altec, it remained a viable corporation. In fact, Asplundh Manufacturing was merely an unincorporated division of Asplundh. This is evident from the purchase agreement by which Altec acquired Asplundh Manufacturing's assets. That agreement is signed not by an officer of Asplundh Manufacturing, but rather by Carl H. Asplundh, Jr., Executive Vice President of Asplundh Tree Expert Co., a tree expert company that exists today and is named as a co-defendant in this action. *See* Item 60, Exh. A at p. 36.

Furthermore, the mere continuation exception is inapplicable to the present case under the Second Department's ruling in *Heights v. U.S. Electrical Tool, Co.*, 138 A.D.2d 369, 525 N.Y.S.2d 653, 654–55 (2d Dep't 1988). In *Heights*, the court held that there is no successor liability where the selling entity ceased production and sale of the machine at issue long before the transfer of assets to the acquiring entity. Here, the record establishes that the former Asplundh Manufacturing Division ceased distributing the model JDC–100 "Brush Bandit" four years prior to the transfer of assets to Altec.

Based on the above, plaintiffs fail to establish that Altec may be subject to suc-

cessor liability pursuant to the "mere continuation" exception.

## C. De Facto Merger Exception

■ Courts are to determine "whether a transaction constitutes a de facto merger ... on a case-by-case basis" analyzing "the weight and impact of a multitude of factors that relate to the corporate creation, succession, dissolution, and successorship." *Sweatland v. Park Corporation*, 181 A.D.2d 243, 587 N.Y.S.2d 54, 56 (4th Dep't 1992) (citing *Santa Maria v. Owens–Illinois, Inc.*, 808 F.2d 848, 861 (1st Cir. 1986)).

■ In particular, New York courts have held that in order for a de facto merger to exist, there must be some evidence of a legal continuity between the predecessor and the successor. *Diaz v. South Bend Lathe, Inc.*, 707 F.Supp. at 100. The Second Circuit has outlined several factors that are indicative of such continuity: (1) a continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) an assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management personnel and physical operation. *See Arnold Graphics Indus. Inc. v. Independent Agent Center, Inc.*, 775 F.2d 38, 42 (2d Cir.1985).

■ Applying these factors to the instant case, it is apparent that the asset purchase agreement between Altec and Asplundh did not constitute a de facto merger. To start, Altec did not expressly assume any successor liability associated with products distributed by Asplundh Manufacturing. *See* Item 60, Exh. B at § 6.2. Nor is there a continuity of ownership between Altec and Asplundh. To this day, the two companies remain distinct and separate entities. It is also uncontested that after selling its manufacturing division to Altec, Asplundh continued (and continues) to operate its various businesses. Moreover, there is nothing in the record and plaintiff presents no evidence that Altec retained the management personnel at the facilities it acquired pursuant to the agreement.

For similar reasons, the court rejects plaintiffs' argument that the *Sweatland* decision creates a question of fact in this case as to whether the agreement between Altec and Asplundh constituted a de facto merger. In *Sweatland*, the plaintiff was injured while using a plate bending roller manufactured by Bertsch & Company ("Bertsch"). Prior to the plaintiff's injury, Bertsch had filed a Chapter 11 bankruptcy petition and entered into an asset purchase agreement with defendant Park Corporation ("Park"), whereby Park assumed liability "with respect to claims, if any, arising with respect to products shipped by [defendant] under the Bertsch name after the date of closing." Park also acquired the use of the Bertsch name and tradition. Perhaps most important is the fact that after the sale of the assets was finalized, Bertsch ceased to exist. Given these circumstances, the Fourth Department held that plaintiff should be allowed to conduct further discovery to determine whether the transaction constituted a de facto merger. *See Sweatland*, 587 N.Y.S.2d at 56.

The circumstances cited by the court in *Sweatland*, however, are distinct from those underlying the present case. As detailed above, unlike defendant *Sweatland*, defendant Altec specifically rejected all tort liability arising from machines manufactured or distributed by Asplundh Manufacturing prior to June 1992. *See* Item 60, Exh. B at § 6.2. Moreover, while Altec did purchase a significant portion of Asplundh Manufacturing's assets, it did not purchase the Asplundh name or tradition. Most determinative on the de facto merger issue is the fact that to this day, Asplundh remains a viable company.

Furthermore, not only does Asplundh continue to exist, the company is named as

a defendant in the present action for their alleged role in distributing the chipper that injured the plaintiff. This is yet another fact disproving plaintiffs' contention that there was a de facto merger between Altec and Asplundh. *City of New York v. Charles Pfizer & Co., Inc.*, 260 A.D.2d 174, 688 N.Y.S.2d 23 (1st Dep't 1999). The defendant in *Pfizer* was sued for the costs of removing asbestos material from a building owned by the plaintiff on a theory of successor liability. In absolving the company from any liability under the de facto merger exception, the First Department held that "the rationale for the merger exception ... is 'the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities' ... 'to ensure that a source remains to pay for the victim's injuries.'" *Pfizer*, 688 N.Y.S.2d at 24 (quoting *Grant–Howard Assocs. v. General Housewares Corp.*, 63 N.Y.S.2d 291, 482 N.Y.S.2d 225, 472 N.E.2d 1 (Ct.App.1984)).

Given that there is no legal continuity between Altec and Asplundh and the factual predicate for finding a de facto merger between Altec and Asplundh is entirely absent, there is no basis to deny defendant's motion under the de facto merger exception. Accordingly, Altec is not liable for the torts of Asplundh Manufacturing.

### III. Summary Judgment on the Failure–to–Warn Claim

■ Although plaintiffs fail to withstand Altec's motion for summary judgment on their successor liability claim, they do raise sufficient questions of fact as to whether Altec had a duty to warn Economy that the chipper's feeding chute should be extended to prevent contact with the chipper knife. For this reason, defendants' motion on the failure-to-warn claim is denied, with leave to renew pending further discovery.

In *Schumacher*, 464 N.Y.S.2d at 439, 451 N.E.2d 195, the Court of Appeals unanimously stated "that a negligence cause of action for failure to warn may exist on behalf of an employee injured by an unsafe machine against a manufacturing corporation which subsequently acquires all or part of the assets of the manufacturer of the machine." The court further ruled that "[t]he duty arises because of the relationship between the acquiring corporation and the purchaser of the machinery ... and because of the knowledge which the acquiring corporation possesses or has reason to possess concerning the risk of personal injury created by operation of the machine ...." *Id.*

Ultimately, the court in *Schumacher* denied defendant's motion for summary judgment on the failure-to-warn claim in part because of evidence that the successor corporation offered to service the brand of machine that injured the plaintiff and otherwise possessed specific knowledge of the deficiencies of those machines. The Fourth Department made a similar ruling in *Sweatland, supra,* when it denied summary judgment on plaintiff's failure-to-warn claims because the successor corporation had performed service work on Bertsch machines, sold spare parts, and retrofitted packages for other Bertsch products.

Although there is no evidence that Altec had any direct contact with Economy Tree Service, the purchaser of the chipper and plaintiff's employer, there is evidence that Altec had notice of the dangers in operating the chipper through its acquisition of Asplundh's litigation files. *See* Item 60, Exh. G. In addition, Altec purchased or leased several of the services centers belonging to Asplundh Manufacturing, as well as its customer list. *See id.,* Exh. A at §§ 1.1(b) and (e), 9.17. Furthermore, Altec agreed to provide warranty services requested by any Asplundh customer until June of 1993, and also purchased the right to sell replacement parts to Asplundh machines. *See* Item 60, Exh. A at § 9.10.

Under these circumstances and the applicable case law, various questions exist as to whether Altec had a duty to warn plaintiff's employer of the deficiencies and

dangers of the chipper. Accordingly, defendant's motion as to plaintiffs' failure-to-warn claim is denied, with leave to renew after discovery on this issue is completed. *See* Fed.R.Civ.P. 56(f).

### CONCLUSION

Based on the above, defendant's motion for summary judgment on the successor liability claim is granted. The motion on the failure-to-warn claim is denied, with leave to renew after further discovery. The court shall meet with counsel on October 2, 2000, at 2 p.m.

So ordered.