**David BECK and Sandra Beck, Plaintiffs,**

v.

**ROPER WHITNEY, INC., and Roper Whitney of Rockford, Inc., a/k/a Roper Whitney Co., Met–Coil–RWC, Inc., Roper Industries, Inc., Forest Industries, Inc., c/o Henry B. Lake and Roper Industries, Inc., c/o Prentice Hall Corporate Systems, All as successors in interest to Roper Whitney, Inc., Defendants.**

No. 99–CV–598C(H).

United States District Court, W.D. New York.

Sept. 27, 2001.

Gerard A. Strauss, Hamburg, New York, for Plaintiffs.

Damon & Morey LLP (Thomas J. Drury, Esq., of Counsel), Buffalo, New York, for Defendants Roper Whitney, Inc., Roper Properties, Inc., and Roper Industries, Inc., c/o Prentice Hall Corporate Systems.

Phillips, Lytle, Hitchcock, Blaine & Huber LLP (Paul P. Zuydhoek, Esq., of Counsel), Buffalo, New York, for Defendant Roper Whitney of Rockford, Inc.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP (Rosario M. Vignali, Esq., of Counsel), New York, New York, for Defendant Met–Coil–RWC, Inc.

## BACKGROUND

CURTIN, District Judge.

Presently before the court are cross-motions by the plaintiffs and two of the defendants for summary judgment on the issue of successor liability, as well as plaintiffs' motion to amend.

On April 23, 1999, plaintiff David Beck filed an action in New York State Supreme Court, Erie County, against Roper Whitney, Inc.; and against Roper Whitney of Rockford, Inc., a/k/a Roper Whitney Co.; Met–Coil–RWC, Inc.; Roper Properties, Inc.; Forest Industries, Inc., c/o Henry B. Lake; Roper Industries, Inc., c/o Prentice Hall Corporate Systems, all as successors in interest to Roper Whitney, Inc. Mr. Beck asserted claims for breach of warranty and failure to warn against Roper Whitney, Inc., and strict products liability against all defendants. These claims arose as a result of injuries Mr. Beck allegedly sustained on April 24, 1996, when he was struck in the head by the arm of a sheet metal brake manufactured in September 1981 by Roper Whitney, Inc. Item 1, Ex. A. Sandra Beck asserted a derivative claim for loss of consortium.

The action was timely removed to federal court by defendants Roper Whitney, Inc.; Roper Properties, Inc.; and Roper Industries, Inc., c/o Prentice Hall Corporate Systems. Item 1. All defendants, with the exception of Forest Industries, Inc., c/o Henry B. Lake, answered the complaint. Items 2, 4, 7. Former Magistrate Judge Carol E. Heckman ordered that discovery be bifurcated into two phases: successor liability issues and all other issues. Item 8. Magistrate Judge H. Kenneth Schroeder, Jr., set out a scheduling order on the successor liability issues. Items 10, 11.

After some discovery, defendant Met–Coil–RWC, Inc., filed a motion for summary judgment on December 1, 2000, seeking to dismiss all claims and cross-claims against it on the ground that it was not a successor to Roper Whitney, Inc. Item 12. In support of its motion, Met–

Coil–RWC, Inc. provided an Affidavit from Katie Michael, Human Resources Director of Met–Coil Systems Corp., and an Attorney's Affidavit with exhibits. Item 12. Plaintiffs then filed a Cross–Motion for Partial Summary Judgment, seeking a determination that each of the defendants was a corporate successor with respect to any liability which may be attributed to defendant Roper Whitney, Inc., as the manufacturer of the sheet metal brake which caused the injury to Mr. Beck. Plaintiffs also filed an Attorney's Affidavit with exhibits in support of their motion. Item 16. Defendant Roper Whitney of Rockford, Inc. (sued in its own name and as Roper Whitney Co.), also filed a motion for summary judgment, supported by an affidavit of Gary Strakeljahn, Vice–President and Chief Financial Officer of Roper Whitney of Rockford, Inc. ("Roper–Rockford"), Item 19, and opposed plaintiffs' motion for partial summary judgment. Item 23.

On February 20, 2001, plaintiffs filed a motion to amend the complaint, Item 25, which was unopposed. Further briefing on successor liability followed. Oral argument was to have taken place on September 7, 2001. The court instead determined that the motions could better be decided on the papers and, with consent of counsel, considered the motions submitted. For the reasons that follow, the court denies Met–Coil–RWC, Inc.'s motion for summary judgment, denies Roper–Rockford's motion for summary judgment, grants in part and denies in part plaintiffs' motion for partial summary judgment, and grants plaintiffs' motion to amend.

## FACTS

For the most part, the facts are uncontested, and are found in the documents attached as exhibits to the various motions.

On April 24, 1996, plaintiff David E. Beck was working as an employee of the Buffalo Sewer Authority. In the course of his employment, he was struck in the head and injured by the arm of a sheet metal brake, Model 812, bearing Serial Number 664 9–81.[1] Plaintiff asserts that the sheet metal brake was manufactured by defendant Roper Whitney, Inc., in or about September 1981. However, since 1981, Roper Whitney, Inc., has undergone a number of different corporate incarnations. Many of the subsequent companies use various combinations and permutations of the Roper and Whitney names, making the process of tracing the company's successors complicated and confusing at best.

In 1981, Roper Whitney, Inc., was a wholly owned subsidiary of Roper Industries, Inc., an Illinois corporation ("Roper Industries, Inc. (Ill.)"). Item 12, Ex. A to Ex. E, p. 1.[2] Roper Whitney, Inc., was located at 2833 Huffman Boulevard, Rockford, Illinois.

---

**1.** In their complaint, plaintiffs indicated that the offending machine was manufactured in or about September 1981, and that its serial number was 664 9–83. However, in their motion to amend, plaintiffs claim that this serial number was in error, and that it should be 664 9–81. Defendants have understood that the machine at issue was manufactured in September 1981. *See, e.g.*, Item 12, Ex. D, and Ex. E, p. 5.

**2.** Attached as Exhibit E to Met–Coil–RWC, Inc.'s motion for summary judgment (Item 12) is defendant Roper Industries, Inc.'s (Del.) Response to Plaintiffs' First Set of Interrogatories. Attached to Exhibit E as Exhibit A is a flow chart compiled by Roper Industries, Inc., showing Roper Whitney Company's corporate history. Immediately following this chart is a series of exhibits, labeled A to H, which set forth the various agreements, bills of sale, and other transactions that reflect the corporate changes in the various Roper Whitney companies. These exhibits will be referred to, for example, as Item 12, Ex. B to Ex. E.

On June 29, 1982, Roper Whitney, Inc.'s separate corporate existence ceased when it was merged into Roper Industries, Inc. (Ill.). At that time, Roper Whitney, Inc., became a division of Roper Industries, Inc. (Ill.). Item 12, Ex. B to Ex. E ("Plan and Agreement of Merger of Roper Whitney, Inc., Enpo Pump Company, and Cornell Pump Company with and into Roper Industries, Inc.").

On June 30, 1982, the assets and liabilities of the Roper Whitney, Inc., division of Roper Industries, Inc. (Ill.) were transferred to Dexter Holdings, Inc., Ex. C to Ex. E ("Transfer of Assets"), which then changed its name to Roper Industries, Inc. (Del.). Item 12, Ex. D to Ex. E ("Certificate of Amendment"). The Roper Whitney division of Roper Industries, Inc. (Del.), became known as Roper Whitney *Company* Division. Ex. F to Ex. E, p. 1.

Following the sale of the Roper Whitney division to Dexter, on June 30, 1982, Roper Industries, Inc. (Ill.) changed its name to Roper Pump Company. On March 29, 1983, Roper Pump Company changed its name to Roper Properties, Inc. At some point, It became a wholly owned subsidiary of Roper Industries, Inc. (Del.). Item 12, Ex. F to Ex. E, p. 1.

On June 30, 1986, Roper Industries, Inc. (Del.) and Roper Properties, Inc. (Ill.) entered into an agreement with Medart Acquisition Corporation ("Medart"), whereby Medart acquired the Roper Whitney Company Division as a "going concern." Item 12, Ex. F to Ex. E (June 25, 1986 Purchase and Sale Agreement), p. 1. By way of this transaction, the Roper Whitney Company Division transferred substantially all of its assets to the newly formed Roper Whitney Corporation "in exchange for which all of the issued shares of capital stock" of said corporation "were issued to Roper Industries, Inc. and Roper Properties, Inc." *Id.* On August 26, 1986 [3], Roper Whitney Corporation (Ill.) stock was sold to Medart. Item 12, Vignali Aff., ¶ 7(e); Ex. A to Ex. E (flow chart) and Ex. F to Ex. E ("Purchase and Sale Agreement").

On March 14, 1988, Medart's subsidiary, Roper Whitney Corp. (Ill.) sold certain assets and liabilities of the Roper Whitney Company Division, "subject to certain specified liabilities and obligations" to Industries Machinery Systems and Supply, Inc. ("IMSS"), a wholly owned subsidiary of Met–Coil Systems, Inc. Item 12, Ex. G to Ex. E (March 14, 1988 Asset Purchase Agreement), p. 1. The purchase price for the assets included a $300,000.00 deposit in escrow of Met–Coil Systems stock. *Id.*, p. 3. Following this transaction, IMSS changed its name to Roper Whitney Company, Inc., to reflect the purchase of certain assets by Met–Coil Systems Corp. from Roper Whitney Corporation. Item 12, Ex. G, p. 1. On April 6, 1988, Roper Whitney Corporation (Ill.) changed its name to Forest Industries, Inc., Item 12, Ex. H to Ex. E ("Articles of Amendment").

In 1990, Medart filed for Chapter 7 Bankruptcy. Item 19, Roper–Rockford Statement of Material Facts, ¶ 8(d).

On August 27, 1993, Roper Whitney Company, Inc. (Ill.), located at the Huffman Blvd. address in Rockford, Illinois, entered an Asset Purchase Agreement with three investors (John K. Forlow, David Casazza, and Gautam Gupta) "or a corporation to be formed by them" for certain assets, including all assets used in the operation of its business, as well as the

---

**3.** This date is apparently the closing date for the asset transfer of the Roper Whitney Company to the Roper Whitney Corporation. *See* Item 12, Ex. A to Ex E—Flow Chart. The parties agree that the assets and stock of Roper Industries, Inc. (Del.) were eventually sold to Medart. Item 12, Ex. E, p. 5.

name "Roper Whitney," and assumed certain enumerated liabilities. Item 19, Ex. B. The three investors formed Roper Whitney of Rockford, Inc., on December 6, 1993. Item 19, Ex. A. Roper Whitney Company, Inc., transferred its right, title, and interest in the name "Roper Whitney Company" to Roper–Rockford on December 7, 1993. Item 19, Ex. D. Roper–Rockford operates from the Huffman Street address in Rockford, Illinois.

On October 30, 1993, Roper Whitney Company, Inc., changed its name to Met–Coil–RWC, Inc. Item 19, Ex. C.

## DISCUSSION

### I. Standard for Summary Judgment

A motion for summary judgment may be granted only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [which materials] ... it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.* 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where parties have filed cross-motions for summary judgment asserting the absence of any genuine issues of material fact, "a court need not enter judgment for either party." *Morales v. Quintel Enter-*

*tainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001), citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121 (citation omitted).

### II. Successor Liability

Defendants Met–Coil–RWC, Inc., and Roper–Rockford each move for summary judgment, essentially on the grounds that as remote purchasers of assets, they are not liable under the doctrine of successor liability for plaintiffs' injuries. Plaintiffs cross-move for partial summary judgment on the issue of successor liability, asserting that each of the named defendants are corporate successors with respect to any liability which may be attributed to defendant Roper Whitney, Inc. Plaintiffs further argue that *Nichols v. Roper–Whitney Co., et al.*, 843 F.Supp. 799 (D.N.H.1994), has collateral estoppel effect not only on defendant Roper Whitney Company, but also on Met–Coil–RWC, Inc., Roper–Rockford, and the other defendants.

■■■ The rule on successor liability is well settled.

Generally, a corporation which acquires the assets of another is not liable for the torts of its predecessor unless: '(1) [the successor corporation] expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape [tort liability] obligations.'

*Klumpp v. Bandit Industries, Inc.*, 113 F.Supp.2d 567, 571 (W.D.N.Y.2000) (quoting *Schumacher v. Richards Shear Co.*,

*Inc.*, 59 N.Y.2d 239, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195 (1983)). These exceptions to the general rule of successor nonliability are set forth in the disjunctive; fulfillment of any one of the four exceptions is adequate to classify the purchasing corporation as a successor corporation.

Before the court addresses the motions of Met–Coil–RWC, Inc., or Roper–Rockford, it will first consider plaintiffs' summary judgment argument on corporate successorship, and whether the New Hampshire District Court's finding in *Nichols v. Roper–Whitney Co., et al.* has collateral estoppel effect on this action.

None of the other defendants, *i.e.,* Roper Properties, Inc., Roper Industries, Inc. (Del)., or Forest Industries, Inc., have contested their successor liability.

### A. Collateral Estoppel

■ The doctrine of collateral estoppel, or issue preclusion, provides that " '[w]hen an action between two parties terminates in a valid judgment, a later action between the parties may be affected[,] [and possibly barred,] even though it involves a different claim or cause of action.' " *Levy v. Kosher Overseers Assn. of America, Inc.,* 104 F.3d 38, 41 (2d Cir. 1997), quoting James Fleming, et al., *Civil Procedure,* § 11.17, at 607 (4th ed.1992). In order to apply the doctrine of collateral estoppel to bar litigation of an issue,

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Levy,* 104 F.3d at 41 (citations omitted). Collateral estoppel is invoked to "promote legal economy and judicial certainty by precluding matters that should or have already been decided." *Zimmermann v. Harris,* 1997 WL 257478 at *2 (S.D.N.Y. May 15, 1997) (citation omitted). Nonparties may be bound by a prior judgment when privity exists between the nonparty and the party bound by the earlier judgment. *Richards v. Jefferson County, Ala.,* 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996).

■ Plaintiffs argue that collateral estoppel may be used against defendants, and that this doctrine would bar defendants from litigating in this action the identical issue of corporate successorship presented and decided in *Nichols.* In 1990, plaintiff Donna Nichols allegedly suffered personal injuries while operating a machine manufactured in 1981 by Roper Whitney, Inc. She and her husband sued Roper Whitney Company, Met–Coil Systems, Inc., Roper Industries, Inc., and Roper Properties, Inc., as successors to Roper Whitney, Inc., asserting claims for strict liability, negligence, and loss of consortium. Of all the *Nichols* defendants, only Roper Whitney Company moved for summary judgment claiming that it was not liable under the doctrine of successor liability. In the *Nichols* case, the plaintiffs did not move for summary judgment on the issue of successor liability. In its holding on the summary judgment motion, the *Nichols* court, apparently armed with many of the same exhibits before this court detailing the various asset purchase and other agreements between Roper Whitney, Inc., and the companies that succeeded it, found that sufficient evidence had been presented warranting denial of Roper Whitney Company's motion. The final disposition of the *Nichols* lawsuit is unknown.

The *Nichols* court set forth New Hampshire's rule for successor liability, similar to that of New York, and then analyzed

whether any of the four exceptions to successor nonliability applied. The court reviewed the Asset Purchase Agreement dated March 14, 1988 (Item 12, Ex. G to Ex. E in this action), and found that there was neither express nor implied assumption of liability for products liability claims by defendant Roper–Whitney Company. *Nichols,* 843 F.Supp. at 803. The court found that there was sufficient evidence to "support a finding that defendant Roper–Whitney Company is liable as a successor to Roper Whitney, Inc. under the de facto merger or consolidation exception to the general rule of successor nonliability." *Id.* at 804. In addition, the *Nichols* court held that the evidence presented supported findings that the fraudulent transfer of assets and mere continuation exceptions also applied. *Id.* at 804–05.

In order to give the *Nichols* decision collateral estoppel effect on this action, the four elements set forth in *Levy, supra,* must be present. Two of those elements exist: the issues in both *Nichols* and this action are identical, and Roper Whitney Company had a full and fair opportunity to litigate the issue of successor liability. However, the *Nichols* court, ruling on a motion for summary judgment, only found that plaintiffs had offered sufficient evidence to raise questions of material fact so as to defeat Roper Whitney Company's motion. Since plaintiffs did not themselves cross-move for summary judgment on the issue of successor liability, the *Nichols* court did not affirmatively declare, as a matter of law, that Roper Whitney Company *was* a successor to Roper Whitney, Inc. Because the successor liability issue was not actually decided on the merits, and because there is no information indicating that the resolution of that issue supported a valid final judgment on the merits, the *Nichols* court's determination on the issue of successor liability cannot be applied with collateral estoppel effect to this litigation.

■ Met–Coil–RWC, Inc., also seeks to invoke collateral estoppel and has submitted cases where courts found a *lack* of successorship between and among the manufacturer of particular Roper machines and various downstream purchasers of assets. Item 25. These cases are similarly inapplicable. In *Parson v. Roper Whitney, Inc.,* 586 F.Supp. 1447 (W.D.Wis. 1984), the issue was whether Roper Whitney, Inc., was a successor to Peck Stow & Wilcox Co., Inc. That is not the issue in the case at bar. In *Houseworth v. Danaher Corp., Veeder–Root Co., and Roper Whitney Co.,* No. 91–G–1958–W (N.D.Ala.1993), the issue was whether Roper Whitney Co. was a successor corporation to Veeder Industries. Not only is the issue in *Houseworth* dissimilar to that in the case at bar, but the Alabama law on corporate successorship differs from that of New York. Lastly, in *Sherman v. Western Pacific Indus., Inc., et.al.,* Sonoma Cty.Super. Ct. No. 197071 (1996), defendants Roper Whitney Co., Met–Coil Systems Corp., and Roper Industries, Inc., had filed motions for summary judgment that plaintiffs did not contest. Item 25, Ex. A, *Sherman,* p. 4. The granting of summary judgment in such a circumstance is not a finding on the merits. The remaining issues in the *Sherman* case, whether the Western Pacific defendants were liable under successor liability to Veeder Corporation, and whether the product line exception to successor liability applies, are not issues in this case.

In summary, this court finds neither plaintiffs' nor defendant Met–Coil–RWC, Inc.'s arguments have merit concerning the collateral estoppel effect of the various cases they each cite in their papers.

The court will now proceed down the ladder from Roper Whitney, Inc., to the various alleged successor companies, and

analyze whether each one is or is not exempt from successor liability.

## B. Successor Liability

### (1) Roper Whitney, Inc. (Ill.)

It is clear that the machine that allegedly injured Mr. Beck was manufactured by Roper Whitney, Inc. (Ill.), in 1981. All parties submitting papers on the issue of successor liability agree that Roper Whitney, Inc. is the starting point for the analysis.

### (2) Roper Industries, Inc. (Ill.)

■ On June 29, 1982, Roper Whitney, Inc., merged with Roper Industries, Inc. (Ill.). Item 12, Ex. B to Ex. E, "Plan and Agreement of Merger of Roper Whitney, Inc., Enpo Pump Company, and Cornell Pump Company with and into Roper Industries, Inc." This corporate transformation would warrant a finding of successor liability for Roper Industries, Inc. (Ill.), as "[a] successor corporation is liable for the debts of its predecessor where there is a merger or consolidation of the two firms." *Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F.Supp. 834, 838 (S.D.N.Y.1977).

### (3) Roper Pump Co. and Roper Properties, Inc.

■ Roper Industries, Inc. (Ill.), then changed its name to Roper Pump Company, which later changed its name to Roper Properties, Inc. Since defendant Roper Properties, Inc., is the same corporate entity as Roper Industries, Inc., this circumstance would warrant a finding of successor liability for Roper Properties, Inc.

### (4) Dexter Holdings, Inc., and Roper Industries, Inc. (Del.)

■ On June 30, 1982, Roper Industries, Inc. (Ill.), transferred assets and liabilities of its Roper Whitney, Inc., division to Dexter Holdings, Inc. Dexter expressly assumed all liabilities in relation to the assets. Item 12, Ex. C to Ex. E ("Transfer of Assets"), p. 1. On the same day, Dexter changed its name to Roper Industries, Inc. (Del.). Item 12, Ex. D. to Ex. E ("Certificate of Amendment"). These transactions would warrant a finding that defendant Roper Industries, Inc. (Del.), assumed successor liability.

### (5) Roper Whitney Corporation (Ill.) and Medart Acquisition Corp.

■ In 1986, there were two transactions in which certain assets and liabilities of the Roper Whitney Company division of Roper Industries, Inc. (Del.), were transferred to Roper Whitney Corporation (Ill.), a new corporation that had been formed, and Roper Whitney Corporation (Ill.) stock was sold to Medart Acquisition Corp. (Ill.). In the Bill of Sale and Assignment and Assumption Agreement, dated June 30, 1986, sellers Roper Industries, Inc. (Del.), and Roper Properties, Inc., assigned to buyer Roper Whitney Corporation (Ill.), the assets of the Roper Whitney division, wherein Roper Whitney Corporation expressly assumed "[a]ll liabilities and obligations of the seller arising after the date hereof under all contracts, leases, commitments and purchase and sale orders . . . ." Item 12, Ex. E to Ex. E ("Bill of Sale and Assignment and Assumption Agreement"), p. 5. This is sufficient evidence, which is unopposed, to warrant a finding that Roper Whitney Corporation (Ill.) is liable under a theory of successor liability to Roper Whitney, Inc.

■ In addition, under the Purchase and Sale Agreement dated June 25, 1986, sellers Roper Industries, Inc. (Del.) and Roper Properties, Inc., sold buyer Medart Acquisition Corp. the Roper Whitney Company division as a "going concern." Item 12, Ex. F to Ex. E, p. 1. In this

transaction, Medart purchased the stock of Roper Whitney Corporation (Ill.). *Id.*, p. 2. This document specifically indicates that the sellers would undertake no liability "for injury to or death of persons . . . occurring after the closing . . . ." Item 12, Ex. E to Ex. E, p. 34. This language expressly transfers liability to Medart and makes it liable as well on a theory of corporate successorship. The new Roper Whitney Corporation (Ill.) became Medart's wholly owned subsidiary. *See* Item 12, Ex. G to Ex. E, March 14, 1988 Asset Purchase Agreement, p. 1.

### (6) Forest Industries, Inc.

On April 6, 1988, Roper Whitney Corporation (Ill.) changed its name to Forest Industries, Inc. As enough evidence has been submitted for the court to find that Roper Whitney Corporation (Ill.) is a corporate successor to Roper Whitney, Inc., given that the only difference between Roper Whitney Corporation (Ill.) and Forest Industries, Inc., is a name change, defendant Forest Industries, Inc., is also liable under a theory of successor liability.

### (7) Industrial Machinery Systems & Supply, Inc.

The next transaction involving various Roper Whitney assets occurred on March 14, 1988, when Industrial Machinery Systems & Supply, Inc. (IMSS), obtained certain assets and liabilities of Medart's subsidiary, the Roper Whitney Corporation (Ill.), pursuant to an Asset Purchase Agreement. In order to determine whether IMSS, as a purchaser of Roper Whitney Corporation (Ill.) assets, is liable under a theory of corporate successorship, the court will analyze each of the four exceptions to the rule to determine whether they apply to IMSS.

### i. Assumption of Express or Implied Liabilities

The Asset Purchase Agreement contains provisions regarding which liabilities IMSS would assume, including the following:

B. Excluded Liabilities. Notwithstanding anything herein to the contrary, the following liabilities (the "Excluded Liabilities") shall not be assumed by the Buyer:

. . . . .

(iv) Any and all liabilities or obligations of Seller (not specifically assumed) whether known or unknown, whenever arising, arising out of or in connection with (i) the manufacture, distribution or sale of any products by Seller (including warranty claims and product liability claims) . . . .

Item 12, Ex. G to Ex. E, p. 2. This express disclaimer of liability warrants a finding that the first exception for finding successor liability does not apply to IMSS.

### ii. De Facto Merger or Consolidation

A de facto merger "is no different . . . from an ordinary merger, except the fact that there has not been 'compliance with the statutory requirements for a merger.'" *Bowers v. Andrew Weir Shipping Ltd.*, 27 F.3d 800, 806 (2d Cir.1994) (citation omitted).

Courts are to determine "whether a transaction constitutes a de facto merger . . . on a case-by-case basis," analyzing "the weight and impact of a multitude of factors that relate to the corporate creation, succession, dissolution, and successorship." *Sweatland v. Park Corp.*, 181 A.D.2d 243, 587 N.Y.S.2d 54, 56 (4th Dept. 1992) (citation omitted). In particular, New York courts have held that in order for a de facto merger to exist, there must be some evidence of a legal continuity between the predecessor and successor.

*Klumpp,* 113 F.Supp.2d at 572, citing *Diaz v. South Bend Lathe, Inc.,* 707 F.Supp. 97, 100 (E.D.N.Y.1989).

The Second Circuit has outlined several factors that are indicative of such continuity: (1) a continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) an assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management personnel and physical operation.

*Klumpp,* 113 F.Supp.2d at 572, citing *Arnold Graphics Indus., Inc. v. Independent Agent Center, Inc.,* 775 F.2d 38, 42 (2d Cir.1985). Courts have not prioritized these factors, and "[i]t is not necessary to satisfy all of these factors to find a merger; rather, these factors are only indicators that tend to show a de facto merger." *Diaz,* 707 F.Supp. at 100–01.

 When analyzing whether a de facto merger has taken place, a court should "disregard[ ] mere questions of form and ask[ ] whether, in substance, 'it was the intent of [the successor] to absorb and continue the operation of [the predecessor].'" *Nettis v. Levitt,* 241 F.3d 186, 194 (2d Cir.2001) (citations omitted). "[W]hen a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's tort liabilities, notwithstanding the traditional rule that a purchaser of corporate assets does not assume the seller's liabilities." *Id.* at 193.

 "The first inquiry under the de facto exception centers on identity of management, personnel, assets and physical location; this is sometimes collectively referred to as 'continuity of enterprise.'"

*New York v. N. Storonske Cooperage Co., Inc.,* 174 B.R. 366, 383 (N.D.N.Y.1994). At the time of the purchase, IMSS was a subsidiary of Met–Coil Systems. As part of the transaction, $300,000.00 worth of Met–Coil Systems stock was deposited in escrow as part of the purchase price for the Roper Whitney Corporation assets. Item 12, Ex. G. to Ex. E, p. 3. "The classic example of a de facto merger is a transaction in which the purchasing corporation pays for the acquired assets with shares of its own stock." Caley & Yard, "Avoid Buying Trouble: Successor Liability for Products Manufactured Prior to Asset Acquisition," *N.Y.S. Bar Journal,* February 1995. The business continued in its same location, with IMSS agreeing to lease the Rockford, Ill. real property, with a right of first refusal. Item 12, Ex. G to Ex. E, p. 6.

Applying these factors to the Medart/Roper Whitney Corporation–IMSS Purchase and Sale Agreement, the court finds that there is a continuity of assets, physical location, and general business operations, as well as an assumption of certain liabilities necessary for the uninterrupted continuation of the business by IMSS. Thus, the court finds that there was a de facto merger between Roper Whitney Corporation and IMSS.

### iii. Fraudulent Transfer of Assets

Although plaintiffs have alleged that the fraudulent transfer of assets is a constant issue throughout the various incarnations of the businesses which contain Roper or Whitney in their names, no evidence of such fraud has been set forth which would allow the court to find successorship liability on the part of IMSS on the basis of fraudulent transfer of assets.

### iv. Mere Continuation

 The mere continuation exception "is generally applied whenever the

successor corporation more closely resembles a reorganized version of its predecessor than an entirely new corporate entity." 2 Louis R. Frumer & Melvin I. Friedman, *Products Liability* § 7.04[4] (1993). The rule in New York governing this exception to successor liability is that it is not available where the predecessor corporation survived the purchase by the alleged successor. *See Howard v. Clifton Hydraulic Press Co.*, 830 F.Supp. 708, 710 (E.D.N.Y.). "The exception refers to corporate reorganization ... where only one corporation survives the transaction; the predecessor corporation must be extinguished." *Schumacher*, 59 N.Y.2d at 245, 464 N.Y.S.2d 437, 451 N.E.2d 195. Since Medart/Roper Whitney Corporation continued to exist following the sale to IMSS, this exception to corporate successorship is not available.

Sufficient evidence, which has not been opposed by either Met–Coil–RWC, Inc., or Roper–Rockford, has been proffered that the de facto merger exception applies to the transaction between Medart/Roper Whitney Corporation and IMSS. The court thus finds that IMSS is liable as a successor to Roper Whitney, Inc.

### (8) **Roper Whitney Company, Inc. (Ill.)**

After the March 14, 1988 transaction, IMSS changed its name to Roper Whitney Company, Inc. (Ill.). Given that the court found, *supra*, that IMSS was liable as a corporate successor to Roper Whitney, Inc., it finds that defendant Roper Whitney Company, Inc. (Ill.) is liable as a corporate successor as well.

Plaintiffs sued Roper Whitney of Rockford, Inc., a/k/a Roper Whitney Co. However, it would appear that Roper Whitney

of Rockford, Inc., is *not* also known as Roper Whitney Co. or, to be correct, Roper Whitney Company, Inc. Roper–Rockford has claimed that "Roper Whitney of Rockford, Inc. and Roper Whitney Company II [*i.e.*, Roper Whitney Company, Inc.] ... are separate and existing corporations and are not affiliated or related in any way." Item 19, Statement of Material Facts, ¶ 11.[4]

Following the sale to IMSS and the name change to Roper Whitney Company, Inc. (Ill.), there were two more transactions involving the assets of what originally had been Roper Whitney, Inc. (Ill.). From 1988 to 1993, "Met–Coil–RWC, Inc., formerly known as Roper Whitney Co., Inc., may have manufactured, distributed, service [sic], etc. similar machinery [to the Roper Whitney, Inc., sheet metal brake model 612, serial no. 664 9–81] ..., at which time the company's assets were sold to Roper Whitney of Rockford, Inc." Met–Coil–RWC, Inc.'s Answers to Plaintiffs Interrogatories, Item 12, Ex. F, p. 3. Met–Coil–RWC, Inc., operated from the Huffman Blvd. address in Rockford, Ill. *Id.* p. 7.

Then, on August 27, 1993, Roper Whitney Company, Inc. (Ill.), entered into an Asset Purchase Agreement with three investors, Forlow, Casazza, and Gupta. Item 19, Ex. B. On December 6, 1993, those three investors incorporated Roper Whitney of Rockford, Inc., which operated from the Huffman Blvd. address in Rockford, Ill. Item 19, Ex. A.

### (9) **Roper Whitney of Rockford, Inc. ("Roper–Rockford")**

■ Defendant Roper Whitney of Rockford, Inc. (Roper–Rockford), has chal-

---

4. Given that Roper–Rockford and Roper Whitney Co., Inc., are not the same company, and that plaintiffs have not amended their complaint to correct the caption "Roper Whitney of Rockford, Inc., a/k/a Roper Whitney Co.," Roper Whitney Company, Inc., has not appeared as a defendant in this matter.

lenged plaintiffs' allegation that it is liable on a theory of corporate successorship to Roper Whitney, Inc. In its motion for summary judgment, it asserts that Roper–Rockford is not the correct defendant. Not only did it not manufacture the allegedly defective machine which caused the injury to Mr. Beck, but it came into existence 12 years after the machine was manufactured. Item 20, p. 4. Further, Roper–Rockford argues that as a mere purchaser of assets of the Roper Whitney Company,[5] it is not liable to plaintiffs, and none of the exceptions to the general rule of asset purchaser successor liability is applicable: (1) it did not expressly or impliedly assume obligations of the transferor corporations; (2) acquisition of the Roper Whitney Company assets did not amount to a de facto merger; (3) the asset acquisition was not an attempt to escape liability for its obligations; and (4) the defendant is not a mere continuation of the seller. *Id.*, pp. 5–10. Plaintiffs simply assert that whether or not Roper–Rockford assumed liabilities of its predecessor, it was a corporate successor under the de facto merger and mere continuation exceptions. Item 16, p. 8.

### i. Express or Implied Assumption of Liabilities

■ The asset purchase agreement dated August 27, 1993, between Roper Whitney Company and John K. Forlow, David Casazza, and Gautam Gupta (the Buyers) provided that the buyers would assume certain specific liabilities. There was no express assumption of liability for current or future product liability actions. The agreement also enumerated liabilities not assumed by the Buyers, although products liability claims were not among them. Otherwise, there is no mention in the Asset Purchase Agreement regarding assumption of liability for defective products, except for a provision that

> Seller shall indemnify and hold harmless Buyer against any loss, damage or expense... suffered by Buyer resulting from ... (ii) any claim made by a third party against Buyer arising prior to Closing out of or in connection with Seller's operation of its business or products sold by Seller even though not asserted until after closing ....

Item 19, Ex. B, pp. 12–13. However, the injury to Mr. Beck occurred after the closing, in 1996.

As for implied liability, "[w]hile no precise rule governs the finding of implied liability, the authorities suggest that the conduct or representations relied upon by the party asserting liability must indicate an intention on the part of the buyer to pay the debts of the seller." *Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F.Supp. 834, 839 (S.D.N.Y.1977), citing 15 Fletcher, *Cyclopedia of Law of Private Corporations* § 7124 (1961 Rev. Vol.). "The presence of such an intention depends on the facts and circumstances of each case." *Id.* Here, the only evidence regarding the Roper–Rockford acquisition is the Asset Purchase Agreement and Roper–Rockford's answers to plaintiffs' interrogatories. Item 16, Ex. E. No evidence has been offered, for example, revealing any admissions of liability on the part of officers or other spokespersons of the alleged successor corporation. *See, e.g., Hoche Productions, S.A. v. Jayark Films*, 256 F.Supp. 291 (S.D.N.Y.1966). On this record, there is no assumption of implied liability on the part of Roper–Rockford.

---

**5.** In its papers, Roper–Rockford refers to its immediate predecessor as Roper Whitney Co.

II, which entity the court has referred to as Roper Whitney Company, Inc. (Ill.)

### ii. De facto Merger

Roper–Rockford argues that it did not acquire the assets of Roper Whitney Company in order to merge or combine two corporations into a single successor corporation. Item 20, p. 8. Following the asset transfer to Roper–Rockford, the seller, Roper Whitney Company, continued in business under the name of Met–Coil–RWC, Inc., "and did not shield itself from future liabilities relating to product liability lawsuits." *Id.*, p. 8. Roper–Rockford then asserts that the elements comprising de facto merger, *see* Section (7)(ii) *supra,* are similarly absent. In support of that position, it provides only a conclusory statement that "[t]hose elements [of the de facto merger exception] are also lacking here." *Id.*, p. 8.

Gary Strakeljahn, Vice President and Chief Financial Officer of Roper Whitney of Rockford, Inc., submitted an affidavit in support of Roper–Rockford's motion for summary judgment, averring that "Roper Whitney of Rockford, Inc. and Roper Whitney Company II [i.e., Roper Whitney Company, Inc.] … are separate and existing corporations and are not affiliated or related in any way. The two entities have completely distinct shareholders, officers and directors, and none are in common." Item 19, Strakeljahn Aff. ¶ 6. However, in an answer to one of plaintiffs' interrogatories, undated, Roper–Rockford admits to acquisition of shares of Met–Coil on the open market. Item 16, Ex. E, p. 14. Roper–Rockford acquired these shares during the course of negotiations, and before and after the asset purchase negotiations. "The number of shares was less than 5%, maybe 2%." *Id.* When Mr. Strakeljahn later prepared his affidavit, he made no reference to Roper–Rockford's acquisition of Met–Coil stock in his otherwise unequivocal document, wherein he disavowed any affiliation or relationship between Roper–

Rockford and Roper Whitney Co., Inc. Item 19, Strakeljahn Aff, ¶ 6. Although this percentage of shares is exceedingly small, it raises at least some · question about continuity of stockholders as an element of a de facto merger.

The second de facto merger element, a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible, is absent. Roper Whitney Company, Inc., survived the transaction, later changing its name to Met–Coil–RWC, Inc. Item 19, Ex. C.

As for the third element, assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor, the evidence indicates that even though Roper–Rockford did not assume tort-related liabilities and carved out a narrow spectrum of excluded liabilities, it did assume the kind of liabilities allowing "uninterrupted continuation" of the predecessor's business. *See* Item 19, Ex. B, p. 2; p.7 (8)(d).

As far as the last element of de facto merger, whether there was a continuity of management personnel and physical operation, Roper–Rockford located its physical operation at the 2833 Huffman Blvd., Rockford, Illinois, address, which was also the address of Roper Whitney Company, Inc. Roper–Rockford bought all the assets of Roper Whitney Company, Inc., which would allow it to continue operation of the same sort of manufactured products. Also important is the fact that Roper–Rockford acquired all of the intangible assets of Roper Whitney Company, Inc., such as "patents, copyrights, trademarks, servicemarks and tradenames (including the names … 'Roper Whitney'), customer lists, distributor lists, sales and marketing records, brochures and information, and all general intangibles (including its 'experience factor' with the Illinois Department of

Labor) ...." Item 19, Ex. B, ¶ 1(ii). In a separate agreement, Roper–Rockford acquired all of Roper Whitney Company, Inc.'s "right, title and interest in, including the right to use the name 'Roper Whitney Company ....'" Item 19, Ex. D.

Given that the answers provided by Roper–Rockford to plaintiffs' interrogatories were incomplete and guarded, Item 16, Ex. E, and given the holding in *Nettis v. Levitt*, 241 F.3d 186 (2d Cir.2001), that if a successor firm acquires substantially all of the predecessor's assets and carries on substantially all of the predecessor's operations, the successor may be held to have assumed its predecessor's tort liabilities, the court finds that there is evidence sufficient to raise a question of material fact as to whether Roper–Rockford is a successor to Roper Whitney Company, Inc., and thus to Roper Whitney, Inc. under the de facto merger exception.

### iii. Fraud

Other than plaintiffs' general allegations that the series of transactions among companies sharing the Rockford name is fraught with fraud, there is no evidence anywhere in the record to suggest that the transaction between Roper–Rockford and Roper Whitney Company was entered into with the intent to escape liability. The court thus finds this exception to successor non–liability does not apply.

### iv. Mere Continuation

Given that the seller, Roper Whitney Co., was not extinguished (despite the fact that it later changed its name to Met–Coil–RWC, Inc.), this exception to successor non–liability does not apply. *See Parra v.*

*Production Machine Co.*, 611 F.Supp. 221, 223 (E.D.N.Y.1985); *Diaz*, 707 F.Supp. at 100.

Thus, the court finds that a question of material fact exists as to whether Roper–Rockford is liable to plaintiffs under a theory of corporate successorship. Consequently, Roper–Rockford's motion for summary judgment is denied, and plaintiffs' cross-motion to hold Roper–Rockford liable as a corporate successor to Roper Whitney, Inc., is also denied.

### (10) Met–Coil–RWC, Inc.

Following the sale of its assets to Roper–Rockford, Roper Whitney Company, Inc., changed its name to Met–Coil–RWC, Inc.[6] on October 30, 1993. Item 19, Ex. C. In its motion for summary judgment, Met–Coil–RWC, Inc., argues that it was not incorporated in its earliest form until 1984, three years after the subject machine was manufactured, and that it was several times removed from the actual manufacturing of the machine. In a conclusory manner, it asserts that there is no evidence to suggest (1) that Met–Coil–RWC, Inc., expressly or impliedly assumed its predecessor's tort liability (without pointing to whom it considers its predecessor); (2) that there was a consolidation or merger; (3) that Met–Coil–RWC is a mere continuation of its predecessor, or (4) that the transaction leading to Met–Coil–RWC's acquisition of assets was entered into fraudulently. Item 12, Aff. of Rosario Vignali, ¶¶ 8, 9. Finally, Met–Coil–RWC, Inc., claims that it is unwise and against public policy to hold it, as a non-manufacturing company, liable when the actual manufacturer is a viable corporate entity that has appeared in this litigation. *Id.*, ¶ 10. In support of its position, Met–Coil–RWC,

---

6. Roper–Rockford asserts, upon information and belief, that Met–Coil–RWC, Inc., subsequently changed its name to "Fenestra, Inc., and now to Fenpro, Inc. (an Illinois corpora-

tion). Fenpro, Inc. is a subsidiary of Met-Coil Systems Corp., which is a public company." Item 19, Strakeljahn Aff., ¶ 4.

Inc., offers the affidavit of Katie Michael, Human Resources Director of Met–Coil Systems Corporation, the parent corporation of Met–Coil–RWC, Inc.[7].

For its part, plaintiffs point out that Met–Coil–RWC, Inc., IMSS, and Roper Whitney Company, Inc., are "one and the same corporation." Item 16, Aff. of Gerard Strauss, ¶ 14.

The court has already found, *supra*, that Roper–Whitney Company, Inc., and IMSS are corporate successors to Roper Whitney, Inc. Based on those findings, it also finds that Met–Coil–RWC, Inc., is a corporate successor to Roper Whitney, Inc., since the only difference between Roper Whitney Company, Inc., and Met–Coil–RWC, Inc., was a name change, effected two months after Roper Whitney Company, Inc.'s asset purchase agreement with Roper–Rockford. The policy arguments advanced by Met–Coil–RWC, Inc., that it should not be held liable on the issue of corporate successorship demonstrate an incorrect reading of *Schumacher*[8] and are without merit.

### III. Motion to Amend the Complaint

On February 20, 2001, plaintiffs filed a Motion to Amend the Complaint, incorporating two changes:

> (1) to correct the [original complaint's] erroneous identification of the subject machine; and (2) to assert additional claims against defendant [Roper–Rockford] on the grounds that said defendant, as the manufacturer of products similar to the sheet brake at issue in this

lawsuit and/or the successor in possession to the design blueprints and other documents pertaining to the make and model of said sheet brake, had a continuing duty to warn of defects in design and breached that duty . . . .

Item 22, p. 1. None of the defendants opposed this motion. Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires." On that basis, the court grants plaintiffs' motion for leave to amend the complaint to reflect the correct serial number and to assert a failure to warn cause of action against defendant Roper–Rockford.

### CONCLUSION

For the reasons set forth above, defendant Roper–Rockford's motion for summary judgment, Item 19, is denied; defendant Met–Coil–RWC, Inc.'s motion for summary judgment, Item 12, is denied; plaintiffs' cross-motion for summary judgment, Item 16, is granted in part, finding that defendants Roper Properties, Inc., Roper Industries, Inc. (Del.), Roper Properties, Inc., Forest Industries, Inc., and Met–Coil–RWC, Inc., are successors-in-interest to Roper Whitney, Inc. (Ill.), and denied in part, finding questions of material fact as to whether Roper Whitney of Rockford, Inc., is liable as a successor-in-interest to Roper Whitney, Inc. Plaintiffs' motion to amend, Item 22, is also granted.

A telephone conference shall be held with counsel on October 19, 2001, at 10:30

---

7. The court discounts much of the information in Ms. Michael's affidavit, as she states a number of facts incorrectly and offers a legal conclusion that Met–Coil–RWC, Inc., is not the legal successor to Roper Whitney, Inc., a determination about which she is unqualified to make.

8. Met–Coil–RWC, Inc., argues that *Schumacher* stands for the proposition, *inter alia,* that the exceptions to successor liability apply only where the predecessor corporation is extinguished. Item 26, p. 2. This conclusion relates only to the mere continuation exception to successor nonliability, not to the three other exceptions.

a.m. Buffalo counsel shall attend in chambers.

So ordered.